# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                    Case No: 8:20-cv-1794-KKM-AAS

THU PHAN DINH,
TRAN KHANH,
NGUYEN DUY TOAN,
all doing business as www.zerostore.site
and other domains identified in appendix,

      Defendant.

_____

## ORDER

The United States of America moves for default judgment and a permanent injunction against Defendants Thu Phan Dinh, Tran Khanh, and Nguyen Duy Toan. (Doc. 64.) The United States filed a Complaint against Defendants for committing wire fraud in violation of 18 U.S.C. § 1343 and for conspiracy to commit wire fraud in violation of § 1349 and sought injunctive relief under § 1345. (Doc. 1.) The Court entered a Temporary Restraining Order and Preliminary Injunction against Defendants, enjoining them from committing wire fraud; using, doing business through, or maintaining certain domain names; making false representations through wire communications; destroying

1

business records; and interfering with Court orders. (Docs. 19, 53.) The Court also directed certain website registries to disable and lock the listed domain names, lock the accounts associated with the domain names registrant, and assist in implementing the order. (*Id.*)

The United States then moved for a clerk's default and for default judgment for Defendants commission of wire fraud, and the clerk entered default.[1] (Docs. 61, 63, 64.) In its motion for default judgment, the United States requests an injunction against third parties. But after the Court expressed doubt about its authority to enjoin these third parties, the United States withdrew its request for an injunction as to them. (Docs. 72, 75.) This Court now grants the United States' motion for default judgment as modified by the United States' withdrawal of its motion for injunction against third parties and enters a permanent injunction against Defendants.

## I.   BACKGROUND

The United States alleges that Defendants Dinh, Khanh, and Toan do business as "www.zerostore.site" and other domains, and have violated, are violating, and are about to violate 18 U.S.C. § 1343. (Doc. 1 & attach. A.) The United States moves for default judgment and an entry of a permanent injunction. (Doc. 64.)

---

[1] Although the United States claims Defendants conspired to commit wire fraud in violation of § 1349 in its complaint, it omits any mention of conspiracy in its instant motion. Accordingly, the Court does not address it in this permanent injunction.

### A. Procedural Background

The United States served Defendants, as authorized by the Court, by emailing them the Complaint, its Motion for a Temporary Restraining Order, Notice of Filing of Supporting Declarations, Summons, and the Court's order authorizing service by email. (Doc. 10.) The United States later served Defendants through the Department of Foreign Relations of the Vietnam Ministry of Public Security with the Complaint, Summons, Motion for a Temporary Restraining Order, Notice of Filing Supporting Declarations, and the Court's Temporary Restraining Order. (Doc. 51.) The Court then converted the Temporary Restraining Order into a Preliminary Injunction. (Doc. 53.) The United States served that Injunction on Defendants through the Department of Foreign Relations of the Vietnam Ministry of Public Security. (Doc. 58.) The clerk entered default against Defendants and the United States now moves for default judgment and for the Court to convert the preliminary injunction into a permanent injunction. (Doc. 64.)

### B. Factual Background

The United States alleges that Defendants use "hundreds of websites" and "various email addresses" to defraud consumers in the United States "and exploit[] the current COVID-19 pandemic." (Doc. 1 at 1–2.) Defendants defraud customers by operating websites that appear to sell goods in high demand from the pandemic but do not ship any goods when customers make purchases. (*Id.* at 2.) Defendants have collectively registered

3

at least 312 websites. (Doc. 4-1 at 4–5.) When customers complain, Defendants provide fake UPS or USPS tracking numbers that falsely show that the products were delivered. (Doc. 1 at 2.) After Defendants received enough complaints or attention from the web host or law enforcement, Defendants would shut the website down and open a new website. (*Id.* at 2–3.) Defendants also cycle through hundreds of PayPal accounts to accept payments from their websites and provide false customer service information on their websites. (Doc. 4-1 at 11–15.)

Defendants live outside of the United States and have concealed their identities and physical addresses. (Doc. 1 at 4.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a federal court to enter default judgment when a defendant fails to plead or defend. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015) (per curiam). A defendant who defaults "admits the plaintiff's well-pleaded allegations of fact." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). "Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain*, 789 F.3d at 1245 (quotation omitted). A "sufficient basis" for default judgment is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quotation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*

## III.   ANALYSIS

Although no defendant has appeared and a default has been entered by the clerk, the Court still has a duty to confirm that it has personal jurisdiction over Defendants and subject matter jurisdiction over the cause of action. Importantly for purposes of entering default judgment, the Court must conclude that the United States's Complaint provides a sufficient basis for the judgment it seeks. The Court finds both personal and subject matter jurisdiction and that the United States has provided sufficient allegations for the judgment it seeks.

### A. Jurisdiction

The Court must determine whether it has personal jurisdiction over Defendants and subject-matter jurisdiction over the case. "Subject-matter jurisdiction can never be waived or forfeited," *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012), and the Court has a duty to ensure it has jurisdiction over a case before deciding it. Because a judgment entered "without personal jurisdiction over a defendant is void as to that defendant," the Court must also assure itself of personal jurisdiction over Defendants. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 924 (11th Cir. 2007) (quotation omitted). Although personal jurisdiction, as opposed to subject-matter jurisdiction, is waivable, a "defendant normally only waives a personal jurisdiction defense if he or she has entered an appearance or was involved in overt wrongdoing to deceive the court and avoid service of process." *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 854 (11th Cir. 2010). The United States has not provided any reason for the Court to think Defendants have waived personal jurisdiction. Thus, if the Court lacks personal jurisdiction over Defendants, any default judgment would be void. Other circuits have held that district courts should assure they have personal jurisdiction over a defendant before entering a default judgment, in part to avoid entering null orders. *See Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001) ("[A] judgment entered without personal jurisdiction is void. It should therefore be apparent that a district court has the

duty to assure that it has the power to enter a valid default judgment."); *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (reversing a district court because the court did not ensure it had personal jurisdiction prior to granting default judgment); *In re Tuli*, 172 F.3d 707, 712–13 (9th Cir. 1999) (same); *see also Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988) ("[A] district court may raise on its own motion an issue of . . . lack of personal jurisdiction . . . ."). The Court concludes it has both personal and subject matter jurisdiction.

The Court has personal jurisdiction over Defendants because the United States served them summons, satisfying Rule 4(k)(2), the "national long-arm statute." *Fraser v. Smith*, 594 F.3d 842, 848 (11th Cir. 2010). Rule 4(k)(2) establishes personal jurisdiction over a defendant when a plaintiff serves the defendant, the defendant is not subject to jurisdiction in any state court, and exercising jurisdiction comports with the Constitution and laws of the United States. *See* Fed. R. Civ. Proc. 4(k)(2). The Court does not need to assess the "laws of all fifty states to ascertain whether any state court of general jurisdiction has jurisdiction over the defendant." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218 n.22 (11th Cir. 2009). Instead, the burden is on the defendant to indicate which state has jurisdiction over it. *Id.* Here, Defendants have not appeared or responded and thus have not directed the Court to any state that has personal jurisdiction over them. Therefore, the Court need ensure only that Defendants have been served, the claim arises

under federal law, and exercising jurisdiction is consistent with the Constitution and laws of the United States.

First, the United States has served Defendants. (Docs. 10, 51, 58.) Second, the claim arises under federal law, specifically under 18 U.S.C. § 1345. (Doc. 1.) The United States is also the plaintiff and, "[e]xcept as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States." 28 U.S.C § 1345. The claim thus arises under federal law.

Third, the exercise of jurisdiction is consistent with the Constitution and laws of the United States. For the Court to exercise jurisdiction over a defendant, it must "comport[] with due process." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). Due process requires "that a non-resident defendant have certain minimum contacts with the forum, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (footnote omitted). "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Id.* And where service is effected under Rule 4(k)(2), the "forum" is the entire United States. *Id.* at 1291 n.6.

Defendants have sufficient minimum contacts with the United States to satisfy due process for specific jurisdiction. The United States alleges and provides supporting

testimony that Defendants' scheme has defrauded "tens of thousands of victims, residing in all 50 states." (Doc. 1 at 7; Doc. 4-1 at 5.) The United States alleges that Defendants "provide false business addresses on their websites" that claim to be in the United States and "provide false 'customer service' phone numbers that actually belong to people and companies in the United States." (Doc. 1 at 4.) In one instance, Defendants listed a "dispatch phone number" for the Irvine Police Department, causing a public safety problem when all the customer complaints were directed to that phone line. (Doc. 4-1 at 27.) By listing addresses in the United States and phone numbers belonging to people, both natural and legal, who reside in the United States, Defendants attempted to convince consumers that they had a legitimate company.[2]

Further, Courts have recognized that where a defendant's internet activities bring the defendant revenue from people in the forum state, the defendant is more likely to have sufficient contacts with the forum. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171–72 (2d Cir. 2010) (finding minimum contacts where a defendant offered products for sale to residents of the forum state and noting that the defendant's "attempt[s] to serve a nationwide market does not diminish any purposeful contacts with [the forum state's] customers"); *Clarus Transphase Sci., Inc. v. Q-Ray, Inc.*, No. C 06-3450 JF RS,

---

[2] The Defendants' actions also had a concrete effect on customers. (*See* Doc. 4-14 at 1 ("The website looked legitimate to me because it had an address located in California."); Doc. 4-17 at 1 ("I thought that the website was run by a legitimate retailer, partially because it listed an address in the United States as the seller's location.").)

2006 WL 2374738, at *2 (N.D. Cal. Aug. 16, 2006). The United States alleges that tens of thousands of victims in the United States have been defrauded by Defendants. Assuming that is true, which the Court must do when deciding a motion for default judgment, Defendants have derived significant revenue from people in the United States, the relevant forum state.

The Court finds that Defendants' have sufficient contacts with the United States such that "the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Sherritt*, 216 F.3d at 1291. Further, as the Court has determined that this case arises under the federal law, the Court also has subject-matter jurisdiction to decide this case. *See* 28 U.S.C. § 1331.

## B. Default Judgment

The United States alleges that Defendants Dinh, Khanh, and Toan, all of whom are doing business as "www.zerostore.site" and other domains, violated, are violating, and are about to violate 18 U.S.C. § 1343, the federal wire fraud statute. As discussed above, default judgment is appropriate where a plaintiff's complaint states a claim for relief or, put differently, where the plaintiff's complaint would survive a Rule 12(b)(6) motion to dismiss

for failure to state a claim. The United States plausibly alleges a claim for relief and default judgment is therefore appropriate.[3]

### 1. The United States Plausibly Alleges Wire Fraud.

To establish liability under the federal wire fraud statute, a plaintiff must prove that the defendant "(1) intentionally participates in a scheme or artifice to defraud another of money or property, and (2) uses or 'causes' the use of the [] wires for the purpose of executing the scheme or artifice." *United States v. Langford*, 647 F.3d 1309, 1320 (11th Cir. 2011) (quotation omitted). When alleging fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. Proc. 9(b). Particularity under Rule 9(b) requires that a plaintiff plead "'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them.'" *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006) (alteration in original) (quoting *U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002)). Rule 9(b)'s particularity requirement "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d

---

[3] The Court also finds that the United States has filed an affidavit stating that the Defendants are not in military service and have shown "necessary facts to support the affidavit," satisfying 50 U.S.C. § 3931. (Docs. 64-1, 64-2.)

1505, 1511 (11th Cir. 1988) (quotation omitted). Rule 9(b) helps ensure that there is "some indicia of reliability" beyond notice pleading requirements that permit allegations based solely on "information and belief." *Clausen*, 290 F.3d at 1310–11.

The United States alleges that Defendants intentionally participated in a scheme to defraud others of money or property. A person defrauds another when they deprive the person of "something of value by trick, deceit, chicane, or overreaching," *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)), by misrepresenting, omitting, or concealing a "material fact," *United States v. Naranjo*, 634 F.3d 1198, 1207 (11th Cir. 2011). "A material misrepresentation is one having a natural tendency to influence, or capable of influencing, the decision maker to whom it is addressed." *United States v. Hasson*, 333 F.3d 1264, 1271 (11th Cir. 2003). And "a jury may infer an intent to defraud from the defendant's conduct." *United States v. Maxwell*, 579 F.3d 1282, 1301 (11th Cir. 2009).

Here, the United States alleges that Defendants "targeted American consumers who [were] searching for health and safety items that have become scarce due to the COVID-19 pandemic." (Doc. 1 at 6.) To carry out this scheme, Defendants created websites that purported to be online stores. (*Id.*) In December 2019, Defendants offered a variety of consumer goods on their websites, but by March 2020, they moved to selling "health and safety items that had become scarce in the U.S. market" when the pandemic began to

intensify in the United States. (*Id.*) Defendants' websites "direct consumers to pay for the items they wish[ed] to purchase through PayPal," but once the consumers pay for the products, Defendants simply keep the money and "never send the products." (*Id.*) When they receive complaints, Defendants provide false UPS tracking numbers that purported to show that the product has been shipped. (*Id.* at 7.) Finally, to implement the scheme, the United States alleges that Defendants use "hundreds of website domains," "shut down some websites when they receive a high volume of complaints, shift their scheme to other website domains, then re-open the websites after some time has passed." (*Id.*) Defendants have also used fake or stolen identities to open "hundreds of PayPal accounts to accept payments from their fraudulent websites." (*Id.*)

The United States sufficiently alleges that Defendants intentionally participated in a scheme to defraud. Based on the Complaint, the Court can reasonably infer that Defendants, to obtain customers' money, intentionally misrepresented the material fact that Defendants would send customers the products advertised online after receiving payment. Defendants operated online stores that offered products for sale. By operating these stores and enabling systems by which a customer could pay Defendants for the offered products, Defendants misrepresented the fact that the customer would receive the products for which he paid Defendants. *See Naranjo*, 634 F.3d at 1207. The Court reasonably infers that these misrepresentations were material because a store's representations that it will

offer a good in exchange for money has a "natural tendency to influence" a customer to pay the storeowner that money. *Hasson*, 333 F.3d at 1271.

Defendants further misrepresent that the items were in fact shipped when they provided false tracking numbers, a representation tending to discourage customers from seeking refunds or complaining to the third-party payment facilitators. *See id.*; (Doc. 1 at 7). These false tracking numbers, for example, have dissuaded PayPal from issuing refunds to complaining victims, (Doc. 1 at 7), and have prevented detection of Defendants' scheme to defraud.

Assuming the United States' allegations are true—which the Court must in determining whether default judgment is warranted—the plain object of the misrepresentations is to obtain the customers' money without providing anything in return. Finally, Defendants' actions support an inference of their intent to defraud: Defendants operate these websites, accept payment for products they never ship, and, after a website receives too many complaints, shut down the website and open a new one that also offers products Defendants never send. *See Maxwell*, 579 F.3d at 1301.

The United States also plausibly alleges that Defendants caused the use of the interstate wires. A defendant "causes" the use of the wires for purposes of 18 U.S.C. § 1343 when he acts "with knowledge that the use of the mails [or wires] will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually

intended." *United States v. Ward*, 486 F.3d 1212, 1222 (11th Cir. 2007) (alteration in original) (quotation omitted). A defendant who uses the internet uses "wires" under § 1343. *See United States v. Collick*, 611 F. App'x 553, 556 (11th Cir. 2015) (per curiam) ("Given that Thompson testified that he and Defendant Collick used the internet to perpetrate their scheme, his testimony also established that Collick committed wire fraud."). As the Court already inferred that Defendants intentionally engaged in the scheme to defraud through online websites, the Court necessarily also infers that Defendants intentionally used the internet to implement their scheme.

Finally, the United States' allegations satisfy Rule 9(b)'s particularity requirement. Although the United States' complaint does not detail when each of the alleged fraudulent activities took place (instead alleging thousands of fraudulent sales), the allegations are specific enough to "alert[] defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham*, 847 F.2d at 1511 (quotation omitted). The United States alleges the specific mechanism by which Defendants implement their scheme—namely, that Defendants create websites that offer goods that consumers can purchase by paying Defendants through PayPal but then Defendants never ship the goods and misrepresent whether that they did and move to new website domains when old ones get too many complaints. Moreover, although not included in the complaint, the United States provides

declarations from five victims who specify when and how they were defrauded by Defendants. (Docs. 4-7, 4-11, 4-14, 4-17, 4-21.) One victim, for example, alleges that she "attempted to purchase" hand sanitizer from Defendants on March 16, 2020, and paid Defendants via PayPal, but never received it. (Doc. 4-11 at 1.) And although the United States alleges Defendants engaged in substantially the same or identical conduct, the specificity of the alleged scheme gives sufficient notice to each Defendant to permit them to determine what conduct they are alleged to have committed. *See Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1275 (11th Cir. 2019).

### C. The United States Is Entitled to Injunctive Relief.

The United States seeks a permanent injunction under 18 U.S.C. § 1345 against Defendants, enjoining them from (1) committing wire fraud, as defined by 18 U.S.C. § 1343; (2) maintaining and doing business through the use of the domain "zerostore.site" and the other domains listed in the appendix to this Order; (3) using the domain "zerostore.site" and the other domains listed in the appendix to this Order for any purpose; (4) using wire communications to make any false representations relating to the sale of consumer goods or to transmit any materials that contain false or misleading statements relating to the sale of consumer goods; (5) destroying business records related to Defendants' business, financial, or accounting operations; and (6) taking actions designed to interfere with any additional Court orders regarding the domains listed in the appendix

16

to this Order. (Doc 1 at 9–10.) The Court concludes that the equitable factors weigh in favor of granting a permanent injunction and that the scope of the United States' request is necessary to protect the interests of the United States and its residents. The United States initially sought an injunction against third party website registries, but it has now withdrawn that request. (Doc. 75.)

Section 1345 expressly authorizes the Attorney General to "commence a civil action in any Federal court to enjoin" someone who is violating or about to violate § 1343. Ordinarily, a plaintiff seeking a permanent injunction must establish "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Based on those factors, the United States is entitled to a permanent injunction.[4]

---

[4] In its supplemental briefing at the request of the Court, the United States contends that it need not "prove the equitable factors when it seeks an injunction pursuant to a federal statute authorizing injunctive relief that was enacted to protect the public interest." (Doc. 75 at 4.) The United States distinguishes *eBay* on the basis that, although it involved a statute contemplating an injunction, it involved two private litigants, not the United States. *See* 547 U.S. at 390. Thus, the United States posits that the other equitable factors need not be shown when it is a party and the injunction is authorized by statute. It cites several older cases to support its position. *See, e.g.*, *United States v. City & Cnty. of S.F.*, 310 U.S. 16, 30–31 (1940); *United States v. Hayes Int'l Corp.*, 415 F.2d 1038, 1045 (5th Cir. 1969). Because the Court concludes that the other equitable factors favor injunctive relief, the Court need not decide whether *eBay* altered the appropriate test for issuing injunctions when they are explicitly contemplated by statute and when sought by the United States. *Cf. United States v. Stinson*, 729 F. App'x 891, 897–98 (11th Cir. 2018) (affirming

First, the United States has shown it suffered irreparable injury and that there is no adequate remedy at law.[5] The United States' injuries here are those injuries suffered by its residents. *See* § 1345(b) (empowering the district court to take "action[] as is warranted to prevent a continuing and substantial injury . . . to any person or class of persons for whose protection the action is brought"); *cf. Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982) ("[A] State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general."). Tens of thousands of United States residents have suffered from Defendants' fraudulent scheme. (Docs. 64 at 7; 4-1 at 5.) By way of example, one of the many PayPal accounts that Defendants used to perpetrate their scheme received "approximately 1,336 payments totaling approximately $27,119." (Doc. 4-1 at 11.)

The theoretical possibility that these United States residents might recover against Defendants does not present an "adequate remedy at law" because there is no real possibility that they shall recover. As the Court noted in issuing a Temporary Restraining Order, the steps Defendants have taken to "hide the proceeds of the scheme" prevents these victims

---

the entry of a permanent injunction sought by the United States under a statute *after* analyzing each traditional equitable factor).

[5] Although courts often label these factors as separate elements, they will often result in identical analyses. *See Lewis v. S. S. Baune*, 534 F.2d 1115, 1124 (5th Cir. 1976) ("Often times the concepts of 'irreparable injury' and 'no adequate remedy at law' are indistinguishable."); Douglas Laycock, *The Death of the Irreparable Injury Rule*, 103 Harv. L. Rev. 687, 694 (1990) ("The two formulations are equivalent; what makes an injury irreparable is that no other remedy can repair it."). Because the Court sees no meaningful distinction between the two elements in this case, it analyzes them together.

from receiving compensation. (Doc. 19 at 10.) And even if these victims knew who defrauded them, it is unlikely many of them suffered enough damage to justify expending legal fees and costs to bring individual suits against foreign defendants. (Doc. 4-7 at 1 (noting that one victim was defrauded $17.97)); *cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997))). Additionally, Defendants' present situation renders it almost certain that they will never pay any monetary judgment, even if an individual had the resources and motivation to pursue a claim against them. *See United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1359 (11th Cir. 2019) ("Equity courts have long recognized 'extraordinary circumstances,' including the likelihood that a defendant will never pay, as one way to 'give rise to the irreparable harm necessary for a preliminary injunction.'" (quotation omitted)). By defrauding United States residents through online stores, Defendants also undermine customers' confidence in shopping online, causing legitimate United States online businesses to suffer "damages of such nature as to be difficult, if not incapable, of measurement." *Youngstown Sheet & Tube Co. v. Sawyer*, 343

U.S. 579, 585 (1952); *see also Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (noting that loss of customer goodwill is an irreparable injury).[6]

Second, the balance of hardships weighs in favor of granting a permanent injunction—Defendants suffer no relevant hardship from an injunction prohibiting illegal activity harming residents of the United States. And finally, the public interest would be served by preventing further acts of fraud upon residents of the United States.

The United States requests the Court enjoin Defendants, their agents, officers, employees, and all other persons and entities in active concert or participation with them from (1) committing wire fraud, as defined by 18 U.S.C. § 1343; (2) maintaining and doing business through the use of the domain "zerostore.site" and the other domains listed in the appendix to this Order; (3) using the domain "zerostore.site" and the other domains listed in the appendix to this Order for any purpose; (4) using wire communication to make any false representations relating to the sale of consumer goods or to transmit any materials that contain false or misleading statements relating to the sale of consumer goods; (5) destroying business records related to Defendants' business, financial, or accounting operations; and (6) taking actions designed to interfere with any additional Court orders

---

[6] The United States argues a different theory, contending that there is no adequate remedy at law that would satisfy the statute's objective to prevent future frauds and that the focus of available legal remedies is limited to those contemplated by the statute at issue. (Doc. 75 at 8–10 (arguing that no adequate remedy at law exists to "vindicate the objectives of the [statute]" (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 314 (1982)).) The Court neither adopts nor rejects this rationale, as it concludes for the reasons stated above that the United States has proven that it suffered irreparable injury and that there are no adequate remedies at law.

regarding the domains listed in the appendix to this Order. (Doc. 64 at 18–19.) The Court grants the scope of the requested relief and enjoins the above individuals from engaging in the enumerated conduct.

Subsection (b) of § 1345 grants the Court broad authority to "prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought." § 1345(b); *see also United States v. Brown*, 988 F.2d 658, 663 (6th Cir. 1993) ("[S]ubsection (b) . . . grants broad remedial authority to the district court."). Absent an injunction against Defendants and their associates, the United States and its residents may suffer continuing and substantial injury from Defendants future fraudulent schemes, including the fraudulent use of the websites listed in the appendix to this decision.

## IV.   CONCLUSION

The United States plausibly alleges that Defendants committed wire fraud in violation of 18 U.S.C. § 1343. This Court has jurisdiction over Defendants and over this action. The United States served Defendants consistent with Rule 4, but they have not appeared or responded to the Complaint. The United States now moves for the Court to enter final default judgment against Defendants and those in active concert with them from

engaging in certain activities. (Doc. 64 at 19.) The Court grants the requested relief.

Accordingly, the following is **ORDERED:**

1. Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Clerk is directed to **ENTER** final default judgment in favor of Plaintiff, the United States of America, against Defendants.

2. Under 18 U.S.C. § 1345, the Preliminary Injunction Order (Doc. 53) is **CONVERTED** into a **Permanent Injunction** and Defendants, their agents, officers, and employees, and all other persons and entities in active concert or participation with them are **restrained from** (1) committing wire fraud, as defined by 18 U.S.C. § 1343; (2) maintaining and doing business through the use of the domain "zerostore.site" and the other domains listed in the appendix to this Order; (3) using the domain "zerostore.site" and the other domains listed in the appendix to this Order for any purpose; (4) using wire communication to make any false representations relating to the sale of consumer goods or to transmit any materials that contain false or misleading statements relating to the sale of consumer goods; (5) destroying business records related to Defendants' business, financial, or accounting operations; and (6) taking actions designed to interfere with any additional Court orders regarding the domains listed in the appendix to this Order. In converting the

Preliminary Injunction Order, the Court removes the previous injunction against the registries and registrars listed in that Order.

3.   **IT IS HEREBY FURTHER ORDERED** that the Court shall retain jurisdiction over this matter for construction, modification, or enforcement of this Order. Under 18 U.S.C. § 1345(a)(3), Plaintiff United States shall not be required to post security for this action.

**ORDERED** in Tampa, Florida, on December 10, 2021.

*Kathryn Kimball Mizelle*

Kathryn Kimball Mizelle
United States District Judge

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                               Case No: 8:20-cv-1794-KKM-AAS

THU PHAN DINH,
TRAN KHANH,
NGUYEN DUY TOAN,
all doing business as www.zerostore.site
and other domains identified in appendix,

     Defendant.

_____

## **<u>APPENDIX</u>**

Internet domains by which Defendants are doing business:

businessstore.xyz

guidesshop.site

guidesshop.online

fungoshop.site

shoesshop.club

shortsstore.xyz

babeshop.site

babestore.site

lalastore.site

vintastore.site

vinsunstore.site

sadostore.site

monstore.site

kangtastore.site

doffystore.site

camzystore.site

tikidstore.site

tadastore.site

zalistore.site

zerostore.site

kaylestore.site

jangstore.site

padastore.site

junzestore.site

kidddstore.site

sarastore.site

zindstore.site

lilastore.site

nizestore.site

saramstore.site

theplaystore.site

cocastore.site

seastore.site

ps3store.site

uzistore.site

dracostore.site

bambostore.site

tacastore.site

fackstore.site

bistore.site

kangstore.site

alidastore.site

atcstore.site

keelinstore.site

ulastore.site

neilstore.site

mushop.site

tutstore.site

mabelstore.site

sugarn.site

zeldastore.site

binkystore.site

bellestore.site

kiddostore.site

soulstore.site

hotstore.site

azustore.site

gemstore.site

nemostore.site

tomshop.site

bazone.site

avastore.site

delestore.site

celinatv.site

selinastore.site

utrastore.site

bellami.site

neala.site

winifreds.site

A-3

kaneweb.site

goldwin.site

thedoris.site

jocasta.site

elatifah.site

pandoratv.site

vincents.site

kiddu.site

zeldas.site

lucasta.site

takadas.site

zinzin.site

paizin.site

longka.site

itaewon.site

acaciatoys.site

zalata.site

adeletoys.site

viviantoys.site

rowantoys.site

songtow.site

kakalot.site

kangtewon.site

jangza.site

lovekids.site

boxtoys.site

giselletoys.site

siennatoys.site

amitytoys.site

A-4

kerenzatoys.site

beatrixstore.site

hildastore.site

edanatoys.site

sarahtoys.site

alicetoys.site

jessestore.site

helenstore.site

roxanatoys.site

stellatoys.site

latifahtoys.site

skybershop.com

shoestyleone.com

vallitomart.com

flacicostore.com

flamigostore.com

fugomart.com

papatimart.com

fugokids.com

kidstorepro.com

globalkidpro.com

tummykids.com

ardenkids.com

tonimart.site

hobokid.site

jonikid.site

kidstore.site

kidsplaza.site

habak.site

skyberstore.site

katastore.site

havadstore.site

paracostore.site

pacorato.site

ronnystore.site

rafastore.site

babiestore.site

pukastore.site

haviestore.site

campustore.site

cyberstore.site

fantasicstore.site

thebluestore.site

kansestore.site

kaiserstore.site

pinkstore.site

franciestore.site

ezoza.site gilber.site

flyder.site

hyberstore.site

mjxstore.site

jinos.site zanus.site

geishies.site

zavara.site

tinokitty.site

kopakids.site

babyloves.site

kidstoyshop.site

vivinostore.site

lalastore.site

grandkids.site

bobie.site

tikidstore.site

padastore.site

junzestore.site

lilastore.site

faberstore.site

garadostore.site

zanta.site

ronnyshop.site

lolykids.site

grandopa.site

jannito.site

nanostore.site

brainmart.site

lionkingstore.site

zarisstore.site

donystore.site

donystar.site

mibstore.site

mygoodideas.site

frankstore.site

ronalstore.site

jinas.site

nanokids.site

bibokids.site

kristinamart.site

A-7

tinoplaza.site

miomart.site

greystore.site

galaxymart.site

mamostore.site

catinostore.site

ridkids.site

navastore.site

piomart.site

ciaostore.site

riverstore.site

dallastore.site

jinofarm.site

liaviastore.site

galaco.site kajito.site

kappaus.site

habaktee.site

rozistore.site

grabielstore.site

rinostore.site

galadostore.site

nicolastore.site

kristinastore.site

vatinastore.site

rinostores.site

zalatastore.site

dragostore.site

greenzstore.site

hallmarkstore.site

linastore.site

nanokidz.site

uggone.site

kidseven.site

kidnice.site

kidfour.site

zeerabe.site

rotoskipper.site

piurared.site

millystore.site

gitasstore.site

braidfamily.site

sootgear.site

umamistore.site

cubestores.site

parisvice.site victostore.site

luckysamuend.com

toygameshophouse.com

tomeshoponline.com

beautyshophouse.com

bestshoptopseller.com

hotdealshoes.com

hotdealshoe.com

myshoestoday.com

bestshoptophouse.com

gamehotfriday.com

tmacmart.com

hudduti.com

rainsocker.com

A-9

petmartsuka.com

pethotsuka.com

gooddytmart.com

shophotsocker.com

cookegoodmart.com

tmartproshop.com

jonygocker.com

buillingshop.com

ultamartshop.com

bootdytoys.com

vivamartjooday.com

rainsocker.site

kulistore.shop

shopforone.site

kulistoreshop.site

dadastore.site

clockforshop.site

lakeshopzakin.site

zinzinstore.site

kisdmartzonzon.site

sublivestoreshop.site

tomtomstoreshop.site

amamashop.site

shopforone.online

zinstoreforone.online

clockforshop.online

clockforshop.xyz

cuckustore.xyz

overliveshophouse.site

zinstorehucklay.site

daddyshopstore.site

storeriverstite.site

fugostoreacnet.site

ohmyshop.site

zinstoreforone.site

cuckustore.site

myliverever.site

mylivereversite.site

themanorcenter.site

parkviewstore.site

surishop.site

babihouseshop.site

tattooshop.site

bulerstore.site

jerivershop.site

vendershop.site

killssuristore.site

pracudashop.site

ivectershop.site

scubidustore.site

savilashop.site

kanlulushop.site

midustore.site

tabookshop.site

microlabshop.site

redbukk.site

julyashop.site

producttopshop.site

rokostore.site

stargonstore.site

megahock.site

sopheaashop.site

pdcookshop.site

packingshop.site

beolashop.site